**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


HOWARD C. LAPENSOHN AND          :          CIVIL ACTION
JILL ABRAMS LAPENSOHN,           :
                                 :          NO. 2:12-cv-01132-JCJ
          Plaintiffs,            :
                                 :
v.                               :
                                 :
LEXINGTON INSURANCE COMPANY,     :
                                 :
                  Defendant.     :


**<u>MEMORANDUM AND ORDER</u>**


**JOYNER, C.J.**                                    **July 23, 2012**

     Before this Court is Defendant's Motion to Dismiss Pursuant
to Fed. R. Civ. P. 12(b)(6)(Doc. No. 4), Plaintiff's Response in
Opposition thereto (Doc. No. 10), and Defendant's Reply to
Plaintiff's Response (Doc. No. 11).  For the reasons which
follow, the Defendant's motion is denied.


**<u>Factual Background</u>**

     According to the facts alleged in the complaint, Plaintiffs,
Howard C. Lapensohn and Jill Abrams Lapensohn, on or about August
17, 2007, purchased property at 1106 Robin Road, Gladwyne, PA, on
which was located a pre-existing dwelling.  In the fall of 2007,

1

Plaintiffs initiated a project to demolish the pre-existing dwelling and construct a larger residence on its footprint.  In December 2007, Plaintiffs purchased an insurance policy from Defendant, Lexington Insurance Company, covering damage to the dwelling for a period beginning on December 31, 2007, and ending on December 31, 2008 (hereinafter "the Policy").

The construction of the new dwelling was substantially completed on December 24, 2008, and Plaintiffs moved into the dwelling on January 1, 2009.  At some point after moving into the dwelling, Plaintiffs discovered damages to the home including cracks, "racked windows and door frames," tile damage, and "separation of walls from floors and ceilings."  Compl. at ¶ 21.  Plaintiffs also allege that issues with negative air quality have led to continuing damage and health issues.

Plaintiffs hired a forensic structural engineer in February of 2011, who determined that the dwelling is structurally unsound.  The engineer determined that the pre-existing joist system upon which the home was built is not sufficient to support the load of the dwelling.  Defendant also retained a forensic structural engineer who agreed with the determinations made by Plaintiffs' engineer in a report dated March 14, 2011.

Plaintiffs filed an insurance claim with Defendant through their broker by letter dated January 18, 2011.  Plaintiffs then initiated this action in Pennsylvania state court on March 18,

2011, by Writ of Summons.[1]  Defendant informed Plaintiffs that they were investigating the claim and would inform Plaintiffs of its coverage position.  Defendant subsequently requested examinations under oath as well as documents related to Plaintiffs' claims.  After a number of intervening events, Plaintiffs officially filed a complaint on February 21, 2012. Defendant subsequently removed the suit to this court pursuant to 28 U.S.C. §§ 1441 and 1332.

In their complaint, Plaintiffs allege two Pennsylvania state law claims.  Count I states a breach of contract claim alleging that Defendant violated the policy by failing to pay for damages to the dwelling.  Count II states a claim pursuant to 42 Pa.C.S.A. § 8371 alleging that Defendant's failure to pay on the Policy was in bad faith.

We now consider Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## **Standard of Review**

When considering a Rule 12(b)(6) motion to dismiss, the district court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  Krantz v. Prudential Invs. Fund Mgmt., 305 F.3d 140, 142 (3d Cir. 2002) (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d

---

[1] Under the Pennsylvania Rules of Civil Procedure, "an action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, or (2) a complaint." Pa. R. Civ. P. 1007. Therefore, in a Pennsylvania court, unlike in federal court, a civil action may commence prior to the filing of the actual complaint.

Cir. 1996)).  In so doing, the courts must consider "whether
under any reasonable reading of the complaint, the plaintiff may
be entitled to relief." Phillips v. County of Allegheny, 515
F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings
Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  The complaint must
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A
complaint need not contain "detailed factual allegations" but a
"formulaic recitation of the elements of a claim will not do" and
the complaint must allege sufficient facts "to raise a right to
relief above a speculative level." Lin v. Chase Card Servs., 427
Fed. Appx. 118, 121 (3d Cir. 2011) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007)).  A motion to dismiss should
be granted only when a plaintiff fails to plead sufficient facts
"to state a claim to relief that is plausible on its face."
Coulter v. Doerr, No. 12-1864, 2012 U.S. App. LEXIS 10839, at *4
(3d Cir. Pa. May 30, 2012) (quoting Twombly, 550 U.S. at 570).

## Discussion

## I. Defendant argues that suit should be barred by the suit limitation provision contained in the insurance policy.

The first basis for Defendant's Motion to Dismiss is that
Plaintiffs' claims are barred by the two-year "suit limitation
provision" found in the Policy because Plaintiffs did not
commence this action until more than two years after the date of

4

loss.  The Policy states: "No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and *the action is started within two years after the date of loss.*" The Policy 14, Compl. Ex. A, at 51.

"Pennsylvania law recognizes as valid suit limitation clauses in insurance policies." <u>Prime Medica Assocs. v. Valley Forge Ins. Co.</u>, 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009) (citing <u>Gen. State Auth. v. Planet Ins. Co.</u>, 346 A.2d 265 (Pa. 1975)). Such a limitation is not "imposed by law; it is a contractual undertaking between parties and the limitation on the time for bringing suit is imposed by the parties to the contract." <u>Lardas v. Underwriters Ins. Co.</u>, 231 A.2d 740, 741-42 (Pa. 1967).

Plaintiffs argue in their response that the "discovery rule" should apply and therefore that the limitations period did not begin to toll when the initial loss occurred but rather when Plaintiffs reasonably discovered the damage to their home. Def.'s Reply 5-6.  Typically, a limitations period will begin to accrue as soon as the "right to institute and maintain suit arises." <u>Haugh v. Allstate Ins. Co.</u>, 322 F.3d 227, 231 (3d Cir. 2003).  However, Pennsylvania law recognizes that in some circumstances, the injured party "may not, despite the exercise of diligence, reasonably discover that he has been injured." <u>Id.</u> (quoting <u>Crouse v. Cyclops</u>, 745 A.2d 606, 611 (Pa. 2000)).  The

discovery rule is a judicially created device which tolls the running of the limitations period in such circumstances.  Crouse, 745 A.2d at 611.  Under the discovery rule, the limitations period does not begin to run "until the point where the complaining party knows or reasonably should know" of the suffered injury.  Id.

Defendant cites several cases to support the position that under Pennsylvania law the limitations period in an insurance contract begins to accrue at the time the loss occurs and not when the insured discovers the loss.  See Gen. State Auth., 346 A.2d at 268; World of Tires, Inc. v. Am. Ins. Co., 520 A.2d 1388, 1390 (Pa. 1987); Petraglia v. Am. Motorists Ins. Co., 424 A.2d 1360 (Pa. 1981); Lardas v. Underwriters Ins. Co., 231 A.2d 740, 742 (Pa. 1967).

However, these cases are distinguishable. First, the contractual language at issue in all of these cases stipulated that suit was barred at a certain point after the "*inception* of the loss." See, e.g., Lardas, 231 A.2d at 741.  In Lardas, the court reasoned that the limitation period should not be tolled when the language describing the limitation period is "too plain and unequivocal" to be ambiguous or misunderstood.  Id. at 742. "The term 'inception of the loss' . . . deals with an objective fact.  The loss occurs and has its inception whether or not the

insured knows of it." Gen. State Auth., 346 A.2d at 268
(internal quotations and alteration omitted).

Second, in all of these cases the "inception of loss"
occurred at a distinct and separate point from the time of
discovery.  The "date of loss" language as applied to the facts
here is less clear because the damage is continuous and ongoing.
Were the loss a singular and discrete event such as a fire, the
"date of loss" would be easily identifiable.  When the
limitations period "requires that the action be filed within a
certain time after a 'definitely established event,' the
discovery rule" does not apply.  Toledo v. State Farm Fire &
Casualty Co., 810 F. Supp. 156, 159 (E.D. Pa. 1992) (quoting
Pastierik v. Duquesne Light co., 526 A.2d 323, 325 (Pa. 1987)).
However, when the language defining the limitations period is
ambiguous because the loss is "progressive and continuing . . .
the time limit for filing suit should run from the date on which
the insured could reasonably be expected to discover that a
continuing occurrence was causing damage." Toledo, 810 F. Supp.
at 160 (quoting Ames Privilege Assoc. Ltd. P'ship v. Allendale
Mut. Ins. Co., No. 89-0631-F, 1989 WL 145720, at *4 (D. Mass.
Nov. 30, 1989)).

Here, the damage as alleged occurred continuously over an
extended period of time.  The "date of loss" language describing
the beginning of the limitations period is therefore ambiguous

and "where a provision in an insurance policy is ambiguous, that provision is construed against the insurer." Colony Nat'l Ins. Co. v. Hing Wah Chinese Rest., 546 F. Supp. 2d 202, 206 (E.D. Pa. 2008) (citing Kvaerner Metals Div. of Kvaerner U.S. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006). Moreover, when Plaintiff first discovered or could reasonably have discovered the damages to the dwelling is a question of fact not clearly discernible at this preliminary stage of the litigation.

The Policy can be reasonably construed, as Plaintiffs suggest, to apply the discovery rule to the suit limitation provision when determining the "date of loss." Viewing the facts in the light most favorable to Plaintiffs, the point at which the damage was reasonably discoverable could be as late as February, 2011, when Plaintiff's engineer determined the dwelling was structurally unsound. Under an alternative construction, the period "after the date of loss," where the damage is continuous and purportedly spans a period going back nearly four years, conceivably could not have yet begun. Taking the facts as alleged in the Complaint, the Court holds that the instant action is not barred by the suit limitation clause.

## II. **Defendant argues that if discovery rule is applicable, the date of loss did not occur within the coverage period contained in the insurance policy.**

Alternatively, Defendant argues that if the discovery rule applies and the limitations period began to accrue when Plaintiff

first discovered the damages, suit should be barred because the loss necessarily did not occur within the Policy's one-year coverage period ending December 31, 2008.  The Policy states: "This policy applies only to loss which occurs during the policy period."  The Policy 15.  Occurrence is defined as "an accident, *including continuous or repeated exposure to substantially the same general harmful conditions*, which results, during the policy period, in: a) 'Bodily injury'; or b) 'Property damage.'"  The Policy 2.

Under Pennsylvania law, courts apply a two-part test in determining whether an insurance policy's coverage extends to a loss or losses.  See Liberty Mut. Ins. Co. v. Treesdale, Inc., 418 F.3d 330, 336-337 (3d Cir. 2005); Erie v. Guar. National Ins. Co., 109 F.3d 156, 162 (3d Cir. 1997); Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56 (3d Cir. 1982).

First, a court must apply a "cause test" to determine whether the loss consists of a "single occurrence or multiple occurrences."  Treesdale, 418 F.3d at 337.  When the injuries "stem from one proximate cause there is a single occurrence." Appalachian Ins. Co., 676 F.2d at 61.  In Appalachian Ins. Co., the court found that although a company's discriminatory employment policy had injured a number of employees over a number of years, for the purpose of determining insurance coverage, there was one occurrence stemming from the company's initial

9

adoption of that discriminatory policy.  Id.

Here, according to the facts alleged in the complaint, the damages to Plaintiffs' dwelling were all the result of the insufficiency of the pre-existing joist system in supporting the load of the newly constructed dwelling.  Therefore, under the "cause test," it appears there was one occurrence or loss for the purpose of determining insurance coverage.

Second, the courts apply an "effects test" to determine *when* the loss occurred for purposes of coverage.  In applying the effects test, "the determination of when an occurrence happens must be made by reference to the time when the injurious effect of the occurrence took place."  Treesdale, 418 F.3d at 337 (quoting Appalachian Ins. Co., 676 F.2d at 61-62).  When the injurious effects are continuous and ongoing, the loss occurs "when the injuries first manifest themselves."  Appalachian Ins. Co. 676 F.2d at 62.  In Appalachian Ins. Co., the court held that the injuries to the company's employees occurred immediately upon the adoption of the discriminatory employment policies because some employees were injured at that time.  Id. at 63.

Applying the "effects test" here, it is not easy to determine whether the loss occurred within the coverage period of the insurance policy.  Plaintiffs contend that they did not reasonably discover the damage to the home until after the expiration of the coverage period but that the damage began to

manifest itself before the expiration of the Policy on December
31, 2008.[2]  We agree with Plaintiffs that for the purposes of
coverage, damage could have first manifested itself during the
Policy period.

Plainly, Plaintiffs and Defendant dispute the point at which
damages occurred for the purposes of determining both whether the
loss occurred during the coverage period and when the limitations
period began to accrue.  Making a favorable inference for
Plaintiffs, the damage could have first manifested itself in 2008
when the home was built.

When the damages occurred and when a reasonable person
should have been made aware of them are both material issues of
fact that we are unable to definitively establish at this early
stage in the proceedings.

It may well be that such a determination will ultimately
show that the loss occurred after the policy expired or that the
limitations period bars suit.  However, considering the complaint
"in the light most favorable" to the plaintiffs, it is also
plausible that Plaintiffs may be entitled to relief.  Because
Defendant's arguments are based on issues of fact and those facts
are disputed by the parties, these arguments are more
appropriately considered at a time following discovery.  See

_____
[2] Defendants contend that the loss occurred either during the coverage period
or when Plaintiffs first discovered the damage to the home.  Therefore, suit
should be barred by either the limitation period or by the expiration of the
Policy.  However, whether the loss occurred during the coverage period and
when the limitation period began to toll are two distinct issues that must be
determined by interpretation of two separate sections of the Policy.

<u>Nelson v. Vigilant Ins. Co.</u>, No. 07-1406, 2007 U.S. Dist. LEXIS 83394 (W.D. Pa. Nov. 9, 2007).  Accordingly, at this time we deny Defendant's Motion to Dismiss.